UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

AARON CLARK,

                Plaintiff,

v.

UNKNOWN ADAMS, et al.,

                Defendants.

_____/

b

Case No. 2:22-cv-104

Hon. Hala Y. Jarbou

## **<u>OPINION</u>**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion for a preliminary injunction and temporary restraining order (ECF No. 3) and motion for leave to file an amended complaint (ECF No. 7).

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director H. Washington, as well as numerous individuals at AMF, including: Warden D. Lesatz; Deputy Warden L. Marshall; Assistant Deputy Wardens D. Peterson and E. Petaja; Grievance Coordinator T. Hamel; Acting Grievance Coordinator P. Mayo; Resident Unit Managers T. Perttu and S. Niemi; Assistant Resident Unit Supervisor R. Sackett; Prison Counselors R. Niemi and T. Bastian; Inspector C. Cummings; Captain Unknown Delene; Lieutenant Unknown Beauchamp; Sergeants Unknown Pynnonen, Unknown Erkkila, and Unknown Brendel; Correctional Officers Unknown Adams, T. Lovato, G. Erickson, Unknown Schwab, Unknown Borgen, Unknown Perala, Unknown Gill, Unknown LaChance, Unknown Holma, Unknown Beasley, Unknown Stein, Unknown Michaelson, Unknown Kytola, Unknown Gagnon, Unknown Loonsfoot, T. Maki; and Property Room Officer Unknown Rule.

Plaintiff also sues the following individuals, but does not provide any titles for them: Unknown Massie, Unknown Mattice, R. Russell, J. Joyal, T. Wilson, Unknown Dove, Unknown Delete, G. Gransinger, Unknown Pietila, R. Napel, Unknown Capello, Unknown Stanchowicz, D. Finegan, P. Lewis, Unknown Pangrazzi, Unknown Kirshofer, J. Monville, G. Hill, Unknown Poyhonent, Unknown Cornado, S. Gustafson, P. Lamb, Unknown Baril, Unknown Roy, Unknown Chung, T. Mohrman, Unknown Mieloszyk, Unknown Leoni, R. Tervo, Unknown Holley, Unknown Carli, Unknown Saari, Unknown Baross, Unknown Jacobson, Unknown Pollard, Unknown Angeli, Unknown Davis, Unknown Party #1 (named as John Doe #1), Unknown Party #2 (named as John Doe #2), Unknown Maudrie, Unknown Klemeit, Unknown Niemi, Unknown

Forcia, Unknown Party #3 (named as John Doe #3), Unknown Party #4 (named as John Doe #4), and Unknown Wilson.

Plaintiff's complaint is hardly a model for clarity. Rather, his complaint is written in a rather incomprehensible stream-of-consciousness fashion, with a paucity of factual development. Nevertheless, the Court has endeavored to summarize Plaintiff's allegations below.

Plaintiff alleges that from February 27, 2019, up until the filing of his complaint, numerous officers and staff members, as well as inmates, have "constantly" labeled him as a pedophile, a "chomo," a child molester, a baby raper, and a rat. (ECF No. 1, PageID.5.) Plaintiff avers that the officers and staff members involved include Adams, Johns, Michaelson, Wilson, Skytta, Presley, Lykinen, Sullivan, DeForge, Pollard, Capello, Mattice, Pangrazzi, Gagnon, Haataja, Sohlden, Schuster, Maki, Mackey, Vizina, Dusincki, Santti, Ochompaugh, Tavila, R. Niemi, T. Bastian, and Perttu. (*Id.*) Plaintiff contends that they have shown other inmates his OTIS sheet, which indicates that Plaintiff has been convicted of two counts of first-degree criminal sexual conduct/mentally disabled relation. (*Id.*) Plaintiff also avers that they loudly accuse him of raping his daughter and other members of his family. (*Id.*) Plaintiff claims that he receives daily death threats and other threats of violence by these "enemies and some officers." (*Id.*) He also claims that they try to force him to return to general population so that the entire administration at AMF can "set [him] up." (*Id.*)

Plaintiff then alleges that for seven days in January of 2019, his cell was extremely cold, causing him to wear all of his clothes and outerwear all day. (*Id.*, PageID.6.) Plaintiff advised Sackett, Jacobson, Perala, Schwab, Delen, Gill, Pietila, Lovato, Borgen, Beauchamp, and Niemi of the issue, but it was not fixed. (*Id.*) He claims that Lesatz and Peterson refused to fix the defective boiler system. (*Id.*)

3

On January 29–30, 2019, Sackett threatened to set Plaintiff up and place him in segregation during a grievance interview. (*Id.*) After lunchtime, Schwab came to Plaintiff's cell and asked Plaintiff why he had "lied on" his co-workers. (*Id.*) Plaintiff denied lying about Lovato; in response, Schwab threatened Plaintiff and told him to get ready to be set up. (*Id.*) Around that same time, Lovato had provided law books to Plaintiff, but also threatened him to sign off on grievances and PREA complaints. (*Id.*) Plaintiff claims that Lovato kept rejecting all of his law library requests. (*Id.*)

Plaintiff further contends that numerous Defendants discriminated against him by treating him "very differently" than other inmates and that he could "not get what everybody else [was] getting" because they did not like him because of his numerous grievances. (*Id.*) He further contends that Defendants Sackett, Lovato, Schwab, Perala, Borgen, Beauchamp, Tervo, S. Niemi, Rule, Marshall, Delene, and Peterson retaliated against him by threatening to place him in segregation in response to his grievances. (*Id.*)

On February 1, 2019, Defendant Rule mixed up all of Plaintiff's legal paperwork despite Plaintiff having had all of it "stacked up very nicely for pack up." (*Id.*, PageID.7.) Plaintiff contends that Defendant Rule damaged his paperwork in retaliation for Plaintiff's grievances against him and his co-workers. (*Id.*)

On February 8 and 12, 2019, Defendants Stein, Kytola, Baross, Gagnon, Michaelson, and Borgen lied to Plaintiff and told him that there were no law books for him. (*Id.*) Plaintiff, however, eventually received his law books, but they were "very, very late." (*Id.*) Plaintiff claims that he is supposed to be able to keep the law books for two days a week instead of three, but that this does not happen because he receives them very late in the day. (*Id.*)

4

On February 27, 2019, Defendant Adams gave Plaintiff some of his mail and called Plaintiff a rapist. (*Id.*) Later that day, Defendant Adams came back to Plaintiff's cell and began taunting him with his Our Daily Bread Christian literature. (*Id.*) Plaintiff claims that Defendant Adams hung the literature on the outside of the cell door slot to spite him. (*Id.*) Defendant Adams lied and told Defendants Lesatz and Joyal that Plaintiff had threatened him. (*Id.*)

On May 19, 2019, Defendant Adams loudly yelled that Plaintiff was incarcerated after being convicted of two counts of criminal sexual conduct involving a mentally disabled woman. (*Id.*) According to Plaintiff, two inmates discussed the fact that Adams had shown them Plaintiff's OTIS sheet while on another block. (*Id.*) Plaintiff claims that he received more death threats, and immediately notified Defendants Borgen, Bastian, Perttu, Beauchamp, Peterson, Marshall, Lesatz, Joyal, Napel, Delene, Brendel, Petaja, Hornel, Gransinger, Washington, and Russell. (*Id.*, PageID.7–8.) Plaintiff avers that all "they" did was cover up the incident. (*Id.*, PageID.8.) That same day, Defendant Adams yelled to the entire wing that Plaintiff had submitted a grievance against him and reiterated what Plaintiff had been convicted of. (*Id.*) Plaintiff again notified the Defendants noted above, but the matter was "swept under the rug." (*Id.*)

Plaintiff avers that numerous individuals at AMF have discriminated against him by treating him differently than everyone else on 3-block. (*Id.*) For example, Plaintiff contends that: (1) he was unable to participate in the incentives in segregation program; (2) receive adequate medical care; (3) receive law library materials; and (4) he received false major misconduct tickets. (*Id.*)

Plaintiff then alleges that on January 15, 2019, Defendant Lovato sexually harassed him by coming to his cell door twice and calling him "gay" for no reason at all. (*Id.*) Plaintiff claims that Defendant Lovato set him up so that he could issue a threatening behavior misconduct ticket

in retaliation for Plaintiff's grievances against him. (*Id.*, PageID.9.) Plaintiff also alleges that on April 12, 2019, Defendant Erickson sexually harassed him by telling Plaintiff that he could "write this d*** up" and that Plaintiff could "rotate this d***." (*Id.*)

Plaintiff also contends that Defendant Hamel wrongfully rejected numerous grievances and refused to process them. (*Id.*) Defendant Hamel also told Plaintiff that if he continued to abuse the grievance system, he would be placed on modified access. (*Id.*) Ultimately, Plaintiff was placed on modified access. (*Id.*) Plaintiff contends that Defendant Hamel kept refusing to process his grievances and placed him on modified access numerous times. (*Id.*, PageID.10.)

Based on the foregoing, Plaintiff asserts violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.13.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory, punitive, and exemplary damages. (*Id.*, PageID.13–15.)

## II.    Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

6

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.     First Amendment Claims

### 1.     Access to the Courts

Plaintiff suggests that his right to access the courts was violated. (ECF No. 1, PageID.13.) Presumably, Plaintiff bases this claim on the seizure of, and damage to, his legal documents by Defendant Rule.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting

7

barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff vaguely states that Defendant Rule (and other individuals) seized his legal materials and also failed to provide law library books on a timely basis. Plaintiff's complaint, however, is devoid of facts describing the underlying cause of action he was allegedly frustrated in pursuing by Defendants' actions. Plaintiff also fails to describe the nonfrivolous claims that he could not pursue in the underlying action. *See Lewis*, 518 U.S. at 353; *Hadix*, 182 F.3d at 405. He also fails to describe any lost remedy. *See Christopher*, 536 U.S. at 415. Rather, Plaintiff appears to take issue with his inability to have greater access to legal materials at any given time. The Constitution, however, protects a prisoner's right of access to the courts, not to the prison library. *See Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985); *see also Lewis*, 518 U.S. at 351 (discussing that a sub-par library or legal assistance program does not establish relevant actual injury). Given the dearth of information regarding the underlying action, Plaintiff has not set forth a plausible First Amendment access to the courts claim. Such claim will, therefore, be dismissed.

### 2.    Grievances and Placement on Modified Access

Plaintiff vaguely suggests that his First Amendment rights were violated when his grievances were not processed and when he was placed on modified access to the grievance procedure. (ECF No. 1, PageID.9–13.) "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Plaintiff had other means of exercising his right to petition government for redress of grievances. Indeed, Plaintiff's ability to

seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Further, Plaintiff was not wholly denied access to the grievance process. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker*, 128 F. App'x 441, 445–47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ MM. Moreover, if a prisoner submits a grievance obtained from a source other than the Step-I grievance coordinator, the grievance coordinator may reject the grievance, in accordance with ¶ J of the policy. *Id.* ¶¶ MM, J(3). As with any grievance rejection under ¶ J, the prisoner may appeal the rejection to the next step of the grievance process. *Id.* ¶ I. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past.

Finally, to the extent that Plaintiff complains about Defendants' failure to provide him a satisfactory response or to act on his grievances, the First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*,

518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Consequently, Plaintiff fails to state a First Amendment claim for his placement on modified access and Defendants' failure to act on his grievances.

### 3. Mail Issues

Plaintiff vaguely references issues with his mail in his complaint. (ECF No. 1, PageID.13.) He refers to "legal mail," presumably based upon his allegation that Defendant Rule seized and damaged his legal paperwork. He also suggests that Defendant Adams taunted him with his Our Daily Bread Christian literature mail by hanging it on the outside of the cell door slot.

"A prisoner's right to receive mail is protected by the First Amendment." *Knop*, 977 F.2d at 1012 (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However, a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822 (1974)); *see also Turner v. Safley,* 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and

institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Pell,* 417 U.S. at 822–23; *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

Plaintiff simply fails to state a First Amendment mail interference claim with respect to the Our Daily Bread literature. While Plaintiff avers that Defendant Adams taunted him by hanging the literature on the outside of his cell door slot, nothing in the complaint suggests that Defendant Adams refused to give the mail to Plaintiff. Accordingly, these allegations fail to state a plausible claim for relief.

As noted above, Plaintiff references "legal mail," which implicates additional layers of constitutional protection. In *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003), the United States Court of Appeals for the Sixth Circuit considered multiple potential sources of protection for legal mail, including the Sixth Amendment right to counsel, the First Amendment right to petition for redress of grievances, the First Amendment right of access to the courts, and the prisoner's general interest in protecting the attorney-client privilege. Simply calling a particular correspondence "legal mail," however, does not implicate each and every one of those protections. For example, the Sixth Amendment right to counsel applies only to criminal prosecutions. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relations in the criminal setting. . . ."); *see also Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). There are no facts alleged in Plaintiff's complaint that support the inference that Plaintiff's relationship with the sending attorney related to a criminal proceeding. Likewise, as discussed *supra*, there are no facts alleged in Plaintiff's complaint that support the inference that the communication bore any relationship to Plaintiff's direct appeal of his criminal convictions, a habeas corpus application, or a civil rights claim. *See Thaddeus-X*, 175 F.3d at 391

(noting that the First Amendment right to access the courts "extends to direct appeals, habeas corpus applications, and civil rights claims only").

The Sixth Circuit has found "that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicated a prisoner's protected legal mail rights." *Sallier*, 343 F.3d at 877. However, the conclusion that "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020) *aff'd* No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. Jun. 9, 2021) ("[T]he mail must be 'properly and clearly marked as legal materials.' . . . . [W]hile the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney.'"). Plaintiff's allegations fall far short in both respects. Simply referencing "legal mail" is insufficient to invoke these protections. Accordingly, Plaintiff's First Amendment claims premised upon interference with mail will be dismissed.

### 4. Retaliation

Throughout his complaint, Plaintiff alleges that various Defendant retaliated against him in various ways for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394 (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff, however, merely alleges the ultimate fact of retaliation in this action. He alleges no facts from which to reasonably infer that Defendants' actions[1] were motivated by any of his protected conduct. The Sixth Circuit,

---

[1] Plaintiff's retaliation claims appear to be primarily based on assertions that Defendants threatened to "set him" up because of his many grievances. While specific threats of harm may satisfy the adverse action requirement, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results), the threats alleged by Plaintiff are simply too vague to pass this threshold. *See, e.g., Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v.*

however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Such allegations are insufficient to state a retaliation claim. Accordingly, Plaintiff's retaliation claims will be dismissed.

## B.      Fourth Amendment Claims

Plaintiff vaguely contends that the "unreasonable searches and seizures" and "legal mail claim" violated his rights under the Fourth Amendment. (ECF No. 1, PageID.13.) Presumably, Plaintiff is referencing Defendant Rule's seizure of his legal paperwork and the damage inflicted thereto.

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim based upon a prison official searching a prisoner's cell and destroying some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison

---

*Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action.").

official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. For similar reasons, the Court held that the Fourth Amendment "does not protect against seizures in a prison cell." *Id.* at 528 n.8.

Like in *Hudson*, Plaintiff simply has no expectation of or right to privacy in his prison cell. The Court, therefore, will dismiss Plaintiff's claims asserting that Defendants' actions violated his Fourth Amendment rights.

### C.     Fifth Amendment Claims

Plaintiff also contends that Defendants' actions violated his rights under the Fifth Amendment, presumably the Fifth Amendment's due process clause. (ECF No. 1, PageID.13.) The Fifth Amendment, however, only applies to claims against federal employees. Here, Plaintiff has sued employees of the State of Michigan. Plaintiff, therefore, cannot maintain his Fifth Amendment claims. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and

their instrumentalities, whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government"). His Fifth Amendment claims will, therefore, be dismissed.

### D.      Eighth Amendment Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contrave society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with " 'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough

17

that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Conditions of Confinement

Plaintiff suggests that his Eighth Amendment rights were violated from January 20–27, 2019, when he was subjected to extremely cold temperatures in his cell. (ECF No. 1, PageID.6.) Plaintiff claims that he had to wear all his clothes and outerwear during that time. (*Id.*) Plaintiff notified various Defendants of the conditions, but they did not fix the defective boiler system. (*Id.*)

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Here, the conditions alleged by Plaintiff, while unpleasant, do not permit the Court to infer a violation of his Eighth Amendment rights. Plaintiff does not allege that he suffered any deprivations of life's necessities, nor does he allege that he suffered any medical conditions, such as frostbite and other ailments, from the temperature in his cell. Plaintiff simply has not alleged that "he suffered anything more than the usual discomforts of

18

winter." *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). Plaintiff's Eighth Amendment claim premised upon the temperature in his cell will, therefore, be dismissed.

### 2.      Failure to Protect

Throughout his complaint, Plaintiff suggests that numerous Defendants labeled him as a pedophile, "chomo," child molester, baby raper, and rat. He suggests that numerous Defendants also made known to other prisoners what Plaintiff was convicted of and imprisoned for. Plaintiff suggests that since 2019, he has been subjected to threats of violence because of these labels.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526–27. In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).

Labeling an inmate as set forth above may constitute deliberate indifference to the inmate's safety. *See, e.g.*, *Comstock v. McCrary*, 273 F.3d 693, 699, n.2 (6th Cir. 2001) (acknowledging that being labeled a snitch could make the inmate a target for prison attacks); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *see also Odom v. McKenzie*, No. 12-CV-79-HRW, 2012 WL 6214367, at *3 (E.D. Ky. Dec. 13, 2012) (citations omitted). "It does not matter whether the risk is caused by the actions of prison officials or may come at the hands of other inmates. If an inmate is believed to be a 'snitch' by other inmates, he or she faces a substantial risk of assault by other inmates." *Spotts v. Hock*, No. CIV. 10-353-GFVT, 2011 WL 676942, at *2–3 (E.D. Ky. Feb. 16, 2011) (internal citation omitted). However, in at least one published opinion,

the Sixth Circuit has held that to state a claim for deliberate indifference under the Eighth Amendment in such a context, a plaintiff must allege, and ultimately establish, that he or she suffered physical harm as a result of being labeled a snitch. *See Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where plaintiff's claim that he was endangered by being labeled a snitch was unsupported by any allegation of harm); *Yaklich*, 148 F.3d at 600–01 (concluding that plaintiff failed to state an Eighth Amendment claim based upon inmate threats where he alleged no physical injury); *White v. Trayser*, No. 10-CV-11397, 2011 U.S. Dist. LEXIS 31434, 2011 WL 1135552 (E.D. Mich. Mar. 25, 2011) (holding that plaintiff failed to state an Eighth Amendment claim where he alleged that defendant endangered his life by thanking him for information about illegal contraband in the presence of other inmates but failed to allege that he suffered any physical injury); *Catanzaro v. Mich. Dep't of Corr.*, No. 08-11173, 2009 U.S. Dist. LEXIS 108443, at *25, 2009 WL 4250027, at *12 (E.D. Mich. Nov. 19, 2009) ("[A]n Eighth Amendment deliberate indifference claim must be grounded in an actual physical injury.").

That said, a prisoner ordinarily does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; instead, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety"); *see also Gresham v. Walczak*, No. 1:20-cv-310, 2020 WL 7872192, at *2 (W.D. Mich. Nov. 30, 2021) (holding that an officer's accusation that a prisoner was a snitch, coupled with a threat of physical harm from a prisoner, was sufficient to state an Eighth Amendment claim).

Here, however, Plaintiff fails to allege facts that would permit the Court to infer that he was ever in any danger of being assaulted over the three years he alleges the labeling and threats have occurred. While Plaintiff need not prove that he has been the victim of an actual attack, nothing in the complaint permits the Court to infer that Plaintiff reasonably fears such an attack. *See Farmer*, 511 U.S. at 834; *Thompson*, 29 F.3d at 242–43. As noted, Plaintiff alleges that Defendants have labeled him and that he has received threats of harm for approximately three years, yet this is the first lawsuit Plaintiff has filed concerning these allegations. If Plaintiff reasonably feared such an attack from other inmates, he would have presumably filed suit much sooner than he did. Plaintiff's allegations are simply too speculative for the Court to conclude that he has set forth plausible Eighth Amendment failure to protect claims. Accordingly, such claims will be dismissed.

### 3.     Verbal and Sexual Harassment

Plaintiff contends that certain Defendants verbally and sexually harassed him. Specifically, Plaintiff alleges that Defendant Erickson told Plaintiff that he could "write this d*** up" and that he could "rotate this d***." (ECF No. 1, PageID.9.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the

21

type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, the Sixth Circuit has joined multiple other courts to conclude that even incidents of sexual touching coupled with sexual remarks do not rise to the level of an Eighth Amendment violation so long as the offensive conduct was "isolated, brief, and not severe[.]" *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1095 (6th Cir. 2019) (quoting *Jackson v. Madery,* 158 F. App'x 656, 662 (6th Cir. 2005)); *see also, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson*, 158 F. App'x at 661 (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards).

However, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges that on one occasion, Defendant Erickson made two sexually harassing comments to him. Plaintiff's singular interaction with Defendant Erickson differs from the repeated interactions between the plaintiff and defendant in *Rafferty*. Moreover, nothing in the complaint suggests that Defendant

Erickson physically touched Plaintiff. Defendant Erickson's remarks, while offensive, do not evidence the sort of repeated, coercive sexual demands at issue in *Rafferty*. As a result, the alleged sexual harassment falls short of the severity necessary to state an Eighth Amendment claim. *See Rafferty*, 915 F.3d at 1095–96. Thus, Plaintiff's Eighth Amendment claims based upon verbal and sexual harassment will be dismissed.

### 4.   Medical Care

Plaintiff vaguely suggests that he did not receive adequate medical care. (ECF No. 1, PageID.8.) The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with

23

knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

Here, Plaintiff's complaint is simply devoid of any facts suggesting that he suffered from any serious medical needs to which Defendants were deliberately indifferent. Merely stating that he did not receive adequate medical care is not enough. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Any Eighth Amendment claims premised upon the denial of medical care will, therefore, be dismissed.

### E. Fourteenth Amendment Claims

#### 1. Due Process

##### a. Grievance Procedure

Plaintiff suggests that Defendants, including Defendant Hamel, violated his Fourteenth Amendment due process rights by failing to process his grievances and placing him on modified access. (ECF No. 1, PageID.13.) Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.

1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker,* 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf,* No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

### b.      Seizure of Property

Plaintiff also appears to suggest that Defendant Rule violated his due process rights by seizing and damaging his legal property. (ECF No. 1, PageID.13.) Plaintiff's claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process claim. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive

04.07.112, ¶ B (eff. Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Plaintiff, therefore, fails to state a claim for the unconstitutional deprivation of his property.

### c.    Misconducts

Plaintiff also vaguely suggests that he received false misconducts in violation of his due process rights.[2] (ECF No. 1, PageID.8.) He specifically references a threatening behavior misconduct ticket issued to him by Defendant Lovato. (*Id.*, PageID.8–9.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the

---

[2] To the extent Plaintiff contends that Defendants Knox and Stevens violated his Eighth Amendment rights by issuing allegedly false misconducts, the filing of an allegedly false misconduct report does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001).

procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

MDOC policy provides that threatening behavior is a Class I misconduct. *See* MDOC Policy Directive 03.03.105, Attach. A (eff. July 1, 2018). A Class I misconduct is a "major" misconduct for which prisoners may be deprived of good time or disciplinary credits. *Id.* ¶¶ B, AAAA. A prisoner like Plaintiff, who is serving an indeterminate sentence for offenses committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34; *see also* Mich. Dep't of Corr. Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=222915 (last visited June 1, 2022). Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. Mich. Comp. Laws § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. Indeed, in this action, Plaintiff does not provide any allegations regarding the sanctions he received as a result of his misconduct convictions. Plaintiff therefore has failed to show that any sanction he received was an "atypical" and "significant deprivation." *Id.*

To the extent Plaintiff was placed in segregation for a period of time as a result of the misconduct tickets, he fails to allege that such placement constituted an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484. In *Sandin*, the United States Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Moreover, to the extent Plaintiff lost certain privileges for a period of time as a result of his misconduct convictions, if confinement in segregation does not implicate a protected liberty interest, it follows that the loss of these privileges, which are lesser punishments, do not implicate such an interest. *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss

28

of visitation privileges did not "rise[ ] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

For all the foregoing reasons, Plaintiff cannot maintain a Fourteenth Amendment due process claim against Defendants premised upon his receipt of allegedly false misconducts.[3]

### 2.    Equal Protection

Plaintiff vaguely contends that Defendants discriminated against him in violation of the Fourteenth Amendment's Equal Protection Clause. (ECF No. 1, PageID.13.) He references "racial/general discrimination." (*Id.*)

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than

---

[3] To the extent Plaintiff intended to raise a substantive due process claim, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in the misconduct proceedings. Consequently, any intended substantive due process claim will be dismissed.

others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Here, while Plaintiff references "racial" discrimination, he does not explicitly state that he is a member of a suspect class and that he was discriminated against because of his membership in that class. Rather, Plaintiff appears to continue that he has been treated differently from other inmates similarly situated without any rational basis for the difference.[4]

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, [he] must demonstrate that [he] "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

---

[4] "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006))). "Similarly situated' is a term of art—a comparator...must be similar in 'all relevant respects." *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff's equal protection claims are wholly conclusory. He fails to allege any facts to demonstrate that his fellow inmates were similar in all relevant aspects. Moreover, he fails to allege facts describing how Defendants treated him differently and that they did so intentionally. Plaintiff's conclusory allegations simply do not suffice to state a claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Accordingly, the Court will dismiss Plaintiff's equal protection claim.

### III.    Plaintiff's Pending Motions

#### A.    Motion for a Preliminary Injunction and Temporary Restraining Order

As noted *supra*, Plaintiff has filed a motion for a preliminary injunction and temporary restraining order. (ECF No. 3.) In his motion, Plaintiff seeks various forms of preliminary

injunctive relief, including access to the law library, use of the telephone, and a transfer from AMF. (*Id.*)

The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits. *S. Glazer's Distribs. of Ohio L.L.C. v. Great Lake Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1982)). As discussed *supra*, the Court concludes that Plaintiff's complaint is properly dismissed. The Court, therefore, will deny Plaintiff's motion for a preliminary injunction and temporary restraining order. *See Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020) ("[A] court must not issue a preliminary injunction where the movant presents no likelihood of merits success.").

### B.      Motion for Leave to File an Amended Complaint

Plaintiff has also filed a motion for leave to file an amended complaint, asserting that he wants to "add (1) or more legal claims along with several more defendants." (ECF No. 7, PageID.40.) Plaintiff's motion is governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that a party may amend its pleadings by leave of court, which "shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a). The Supreme Court has identified some circumstances where "justice" may counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). If a claim would be properly dismissed, amendment to add the claim would be futile. *See Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

Here, Plaintiff seeks to add one or more claims along with several more defendants. Plaintiff, however, fails to identify the claims and defendants he wishes to add. Moreover, he has not attached a proposed amended complaint that resolves the deficiencies with his claims as

described above. Given the lack of a proposed amended complaint, the Court concludes that it would be futile to grant Plaintiff's motion. Plaintiff's motion for leave to file an amended complaint will, therefore, be denied. Plaintiff may, if he wishes, pursue his additional claims for relief against additional defendants by filing a new lawsuit.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's motion for a preliminary injunction and temporary restraining order (ECF No. 3) and motion for leave to file an amended complaint (ECF No. 7).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   June 27, 2022                              /s/ Hala Y. Jarbou
                                                    HALA Y. JARBOU
                                                    UNITED STATES DISTRICT JUDGE